The opinion of the Court was delivered by
Pociié, J.
Plaintiffs claim, in a petitory action, the ownership of a tract of land alleged to be in the illegal possession of the defendants.
A statement of the salient facts which led to this controversy, is a necessary prerequisite to a proper understanding of the issues presented under the pleadings.
Abraham Nesom died in 1849, leaving some property, and' three minor children, (one of whom died yet a minor,) issue of his marriage with Rebecca D. Jane Albertson, who survived him, and was qualified ns natural tutrix of said minors.
Tilomas Nesom, a brother of the deceased, was appointed as administrator of the succession, and in an account of his administration, presented in 1852, it appeared that the succession funds in his hands amounted to $5,454. At the- death of his wife, Mary Van Hook, Thomas Nesom was qualified as natural tutor of their only child, Luenza Nesom, (who died without issue, at the age of eighteen years); and Tilomas Nesom then married his brother Abraham’s widow, from whom he had two children, Thomas and Martha, the plaintiffs in this case. He died in 1853, and his widow married Henry A. Burt, who *1006 became her co-tutor, in her double tutorship, of the minor children of Abraham and of Thomas Nesom, by his marriage with her.
In 1854, James Nesom, who had been appointed administrator of his brother Thomas Nesom’s succession, and tutor of his minor child, Luenza, presented to the probate court a petition, in which he recited the debts due by said succession, including the sum of $5,454 due to the succession of Abraham Nesom, another debt due to a merchant, and the claims of the minor, Luenza, in right of her mother’s separate estate, and of her share in the community; and in which he averred that a sale of the succession property was necessary, for the purpose of paying the debts and of effecting a partition, and he concluded, by praying for an order of sale of the succession property, for the “ pur-' pose of paying the debts and settling the various claims against the estate.”
On this petition, the following order was rendered : “ It is ordered, adjudged and decreed by the Court, there appearing a large amount of debts against the estate of Thomas Nesom, and no money on hand to satisfy the same, that the propérty comprising said estate and succession, both real and personal, be sold after due and legal advertisement, according to Articles 990, 991 and 992 of the Code of Practice.”
At the sale made in obedience to that decree, property, consisting of lands, slaves and movables, amounting to $19,303.30 was adjudicated to Mrs, Rebecca Jane Burt, and property of like description, amounting to $3,750, was adjudicated to James. Nesom, as tutor of Luenza Nesom. A day or two before the sale, family meetings, held in behalf of the minor children of Abraham and of Thomas Nesom, and in behalf of Luenza Nesom, had authorized and instructed the respective tutors of these children to purchase at the sale, for said minors, property to the extent of their respective interests and claims in and to the proceeds of said sale.
In hisproees verbal of sale, the administrator does not state that the adjudications made to Mrs. Burt were made in her capacity of tutrix, but the proees verbal is signed by herself and husband, as tutrix and co-tutor.
• She then remain ed in j>ossession of the lands claimed by plaintiffs, which she improved and cultivated, until the year 1863, when she sold them, as her individual property, to G-. & H. King, who subsequently mortgaged that property to Meyer, Weis & Co.
At the suit of the latter, in executory process, in 1877, these lands were adjudicated to Julius Weis, who sold them, in 1878,.to H. I). King, but the latter’s titles were recorded only after the institution of this suit against Weis, and II. D. King was then made a party herein, by an amended petition.
*1007 • Now, plaintiffs, in urging that the sale, of December, 1854, was a partition sale, and that the lands in suit were purchased by their mother and tutrix, for their account and benefit, under the advice of the family meeting- above referred to, allege the nullity of the sale to the Kings by their mother, in 1863, of the sheriff’s sale in 1877, and of the sale by Weis to King in 1878.
They contend, that if the sale of 1854 is held to be null as a partition sale, they own the lands in their right of inheritance from their father, Thomas Nesom, and from their sister, Luenza.
Defendants contend, that the sale of December, 1854, was a succession sale to pay debts, and is legal and valid as, such, and that the lands in suit were adjudicated to Mrs. Rebecca Jane Burt, in her own right, and not as tutrix, and they urge the validity of the subsequent sales made under her purchase.
They make other defenses, and urge other claims, which we deem it unnecessary to enumerate and consider, under the views which we have taken of this ease.
Plaintiffs were recognized as owners of the lands claimed by them by the judgment of the lower court, from which defendants have appealed.
The pivotal point of this case, as suggested by the foregoing state'rnent of the facts and pleadings, turns upon the construction of the succession sale of December 23, 1854, and will find its solution in the consideration of the two following propositions :
1. Whether the sale of December, 1854, was a partition sale, or a sale to pay debts.
• 2. Whether the-purchases of Mrs. Rebecca Jane Burt wore made in her own right and account, or for, and for the benefit of the minor children of Abraham and of Thomas Nesom, by his second marriage. ■
1. Under the unequivocal rules of our law regulating successions, it is clear that the proceedings provoked by the administrator have none of the elements of a partition sale, and that if his proceedings were intended to operate such a sale, they are absolutely null, and nó sale took effect thereunder.
In the first place, the administrator has no right, as such, to prov-oke a sale of the effects of the succession in an action for partition. 22 An. 309, Hebert vs. Hebert.
The proceedings were not carried on contradictorily between the owners of the property held in indivisión ; the minor, Luenza., was not a party ; the administrator, if considered as party plaintiff, having no interest of ownership in the property to be partitioned ; there was no prayer for the appointment of experts to report upon the possibility or impossibility of a partition in kind, and no suggestion of family *1008 meetings, for the purpose of fixing the terms and conditions of sale in behalf of the minors.
It is elementary, that the character or nature of the sale must be tested by the prayer of the petition, and by the decree rendered thereon. The administrator prayed for a sale to pay debts and to settle the various claims against the estate, under which language we fail to discover any reference to a sale for the purpose of effecting a partition among the heirs.
The debts due by the succession consisted of the amount due to the succession of Abraham Nesom, to the New Orleans merchant, and to Luenza Nesom, in the right of her mother’s separate property; the claims against the estate consisted of the share of Luenza in the community between Thomas Nesom and Mary Van Hook. The interest of the present plaintiffs was merely residuary.
For the purpose of settling such claims and of paying these debts, it was perfectly regular in the administrator to provoke a sale of succession property; and it was equally legal for the court to order such a sale. That such was the purport, the moaning and the effect of the order granted by the court, and quoted hereinabove, is mauifest from the mere reading of the decree, and is too plain for comment or discussion.
We are, therefore, clear, that the sale ordered by the court, and effected in December, 1854, was obtained, and was made for the purpose of paying the debts of the succession, and that, as such, it was a valid sale.
2. In our opinion, the record is almost as clear on the second proposition, as to the nature of the purchases made at that sale by Mrs. Rebecca Jane Burt.
In hisproces verbal of sale, the administrator is very particular in his recital of his various adjudications.
Touching all the purchases made for the minor, Luenza Nesom, the instrument mentions, with great care and caution, that the adjudications are made to James Nesom, as tutor of the minor, Luenga, Nesom ; whereas, no qualification is added to the capacity of Mrs. Burt, in the. several adjudications made to her. This very significant circumstance, coupled with the fact that Mrs. Burt represented, as tutrix, two sets of minors, whose respective rights differed in amount, as well as in character, and that no purchases, even if any were made in her capacity of tutrix, were stipulated to be in the name or account of either set of minors, leaves no doubt in our minds as to the intention of Mrs. Burt to buy the property in her own right. This circumstance may account for her failure to carry out the instructions of the family meeting, or in keeping with the advice of the family meeting, and she may have *1009 discovered that the purchase which she was making would far exceed the interest of said minors. But, be that as it may, her violation of the instructions of the family meeting, and her responsibility therefor, cannot be inquired into in this suit, and cannot affect the rights of third parties. This intention also appears from the manner.in which she improved, at great expense, and cultivated the land in question, and from the sale which she made of it in 1863, as her individual' property.
Jurisprudence, in keeping with the textual provisions of our law, has established the rule, that the adjudication at a succession sale, by the sheriff, auctioneer, or representative of the succession, is the completion of the sale; and it .needs not be followed by an act passed before a notary ■, the purchaser becomes the owner of the-article adjudged, and tire contract is from that time subjected to the same rules which govern the ordinary contract of sale. C. C. Arts. 2608, 2623.
The proces verdal of the auctioneer or representative of the succession, made in pursuance of his adjudications, and recorded, makes proof of itself, is evidence of the sale, and no act under the signatures of the parties is necessary to perfect it. 7 La. 468; 6 R. 26; 3 An. 150; 12 An. 164.
Hence, the signatures of Mrs. Burt and of her husband, being unnecessary to complete her titles under the proces verdal, could not, in law, add to, or detract any force or effect from the clear legal meaning of that instrument, and can and must be considered as mere surplusage.
■In the case of Carroll vs. Sheen, recently decided, 34 An. p. , Mrs. Carroll had purchased at a sheriff’s sale, property sold in execution of a claim belonging to the community between her deceased husband and herself, and had signed the sheriff’s proces verbal or deed of sale in her capacity of tutrix, but had not been thus described as adjudicatee in the body of the deed. To the claim of her children, that the property thus purchased belonged to them, we answered that the recital of the sheriff, and not the unnecessary signature of the adjudicate©, was the test of the nature of the sale and of the purchaser’s title.
Plaintiffs’ argument, that Mrs. Burt, having purchased, under the regime of the community, property exceeding by some $1,300 the aggregate amount of her various claims, personal and as tutrix, against the estate of Thomas Nesom, her purchases fell into the community, and were not her separate estate, is not pertinent to the issue raised in the pleadings under the petitory action. Plaintiffs’ recovery depends upon the alleged adjudication to themselves through their tutrix. Having failed to show such an adjudication, they cannot raise the question as to the nature of another party’s purchase.
*1010 It is immaterial to the validity of title which they set up, to inquire into the question as to whether thepurchase made by Mrs. Burt, enured to her separate benefit, and thus became her separate property, or not.
But conceding, for the sake of argument, that the property thus purchased had fallen into the community, and that defendants’ title could be affected thereby, the record shows that J. A. Burt joined his wife in the sale to the Kings, in 1863, and this would have operated a divestiture of the community’s title to the property.
Whether it be true, as urged by plaintiffs, that the sale of all the property was not necessary to the payment of the debts of the succession ; that less was due to the succession of Abraham Nesom and to the minor, Luenza Nesom, than was stated by the administrator; that Mrs. Burt has never settled for the purchase price of her purchases, are all questions of no concern to third persons purchasing from her.
It is now no longer an open question, that a purchaser at a sale under the order of a probate court, which is a judicial sale, is not hound to look beyond the decree recognizing its necessity. He must look to the jurisdiction of the court; but the truth of the record concerning matters within its jurisdiction cannot he disputed. Ilennen’s Digest, p. 1494, No. 5, and authorities cited.
There is no question as to the jurisdiction of the court which rendered the order of sale in this case.
It was incumbent on plaintiffs, as a condition of success, to make out ■a clear legal title to the property which they claim; they have not even succeeded to throw a reasonable doubt on that of their opponents, and hence, they must be defeated.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed; and it is now ordered, that plaintiffs’ demand be rejected, and their action dismissed at their costs, in both Courts.